GEORGE NICHOLAS GRABAVOY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Grabavoy v. Commissioner
Docket No. 46674-86
United States Tax Court
T.C. Memo 1991-165; 1991 Tax Ct. Memo LEXIS 184; 61 T.C.M. (CCH) 2392; T.C.M. (RIA) 91165; April 10, 1991, Filed *184 An Order of Dismissal and Decision will be entered under Rule 155. George Nicholas Grabavoy, pro se. Jeffrey N. Kelm and Michael J. Calabrese, for respondent. DAWSON, Judge. POWELL, Special Trial Judge.
DAWSON
MEMORANDUM OPINION This case was assigned to Special Trial Judge Carleton D. Powell pursuant to section 7443A(b) and Rule 180 et seq. [1] The Court agrees with and adopts the opinion of the Special Trial Judge that is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE By a notice of deficiency dated September 8, 1986, respondent determined a deficiency in income tax and additions to tax under sections 6653(a)(1) and 6661 in the respective amounts of $ 172,501.50, $ 8,625.08 and $ 17,250.00 for the 1982 taxable year. Respondent also determined an addition to tax under section 6653(a)(2) equal *185 to 50 percent of the interest due on the entire deficiency. In his answer, respondent contends that increased interest under section 6621(c) is due. The case is before us on respondent's Motion to Dismiss for Lack of Prosecution. We grant that motion and also require petitioner to pay a penalty to the United States in the amount of $ 10,000 under section 6673. The facts are as follows. Petitioner is a dentist. On his 1982 tax return he claimed deductions totaling $ 177,749 with respect to his dental practice (referred to herein as Schedule C deduction). He also claimed deductions in the amount of $ 3,942 arising from real estate operations (herein Schedule E deductions), a loss in the amount of $ 249,518 from transactions with Hillcrest Securities (herein the Hillcrest loss) and itemized deductions in the amount of $ 5,313 (herein Schedule A deductions). When his return was examined petitioner refused to meet with respondent's agents. Respondent subsequently disallowed all the deductions claimed because the amounts could not be substantiated. Petitioner filed a timely petition with this Court. At the time that the petition was filed, petitioner resided in Joliet, Illinois. *186 The Hillcrest loss arises from purported straddle transactions with Hillcrest Securities. The Hillcrest transactions are properly characterized as a "tax shelter." Originally there were over 1,000 cases involving Hillcrest losses. These taxpayers were located in all areas of the United States, and the cases ultimately were assigned to Special Trial Judge Powell. There were several pretrial conferences involving the Hillcrest cases, but, while served with orders requiring his attendance, petitioner did not appear. Initially it appeared that several cases would be tried as so-called test cases. There, however, were difficulties in selecting the so-called test cases, and, after consultation with attorneys representing various taxpayers and respondent, the Court decided to hold regional pretrial hearings to determine which cases, if any, would be tried. The vast majority of the cases have been settled. On January 30, 1990, the Court calendared this case for a pretrial conference in Chicago, Illinois, on March 14, 1990. That order specifically provided that, unless a settlement was reached, if petitioner did not appear, the case would be dismissed and a decision would be entered *187 in the amount contained in the notice of deficiency. On March 8, 1990, the Court received a document from petitioner that stated that he accepted respondent's settlement offer regarding the Hillcrest issue. There was no reference to the other issues. At the hearing, there was no appearance by or on behalf of petitioner. Mr. Kelm, respondent's counsel for the Hillcrest cases appeared and stated that he had not received any confirmation from petitioner that the offer had been accepted. Mr. Calabrese, respondent's counsel for the non-Hillcrest issues stated he had been unsuccessful in obtaining satisfactory substantiation for the other issues. He also stated that there had been settlement conferences arranged, but petitioner had failed to attend. Both attorneys stated that they had not suggested that petitioner was not required to attend the hearing. Respondent orally moved to dismiss the case for failure to prosecute. Initially we were of the opinion that the case should be dismissed for failure to prosecute. Our primary concern, however, was that petitioner should be given the opportunity to show that he was entitled to some Schedule C deductions. We took that motion under *188 advisement and allowed 60 days within which the parties could attempt to settle the matter. On April 27, 1990, Mr. Calabrese informed the Court by letter that he had spoken with a Mr. House, petitioner's accountant, in an attempt to settle the case. Mr. House is not authorized to practice before this Court. He also stated that he had written a letter to petitioner scheduling a conference for April 6, 1990, and that petitioner did not attend that conference. By a letter dated May 28, 1990, petitioner stated that he desired to settle the case but respondent would not cooperate. As a result of these communications, the Court, on June 13, 1990, ordered petitioner to contact Mr. Calabrese and schedule a conference. Petitioner was further ordered to bring all of his records to that conference. It was further ordered that, if the case was not settled by August 29, 1990, the case would be set for hearing in Washington, D.C. on August 29, 1990. That order warned that, if the terms of the order were not complied with, sanctions, including dismissal of the case, would be applied. On July 11, 1990, Mr. House, petitioner's accountant, met with Mr. Calabrese. Petitioner did not attend *189 the conference. As a result of this meeting, Mr. Calabrese was willing to recommend the allowance of $ 131,735 in total deductions. On August 28, 1990, there was a conference call with Mr. House, Mr. Calabrese and the Court. Mr. House assured the Court that the case would be settled, and the Court informally continued the matter for 60 days. On October 22, 1990, petitioner filed a Motion for Consolidation of Cases. In that motion, petitioner stated that "the presentation to the Court of decision documents by October 29, 1990 will not occur." The motion sought to consolidate this case with a case involving a subsequent year and different issues. On October 23, 1990, petitioner filed a Motion for Hearing on Respondent's Motion to Dismiss for Lack of Prosecution. On November 21, 1990, the Court denied petitioner's motion to consolidate. By order of that same date, the Court granted petitioner's motion for a hearing and calendared the case for trial on January 7, 1991, in Kansas City, Missouri. That order provided: Petitioner has repeatedly stated that the Hillcrest issue has been settled. That issue, therefore, is deemed to have been conceded consistent with respondent's *190 nationwide settlement offer. We assume that all other issues raised in the notice of deficiency are not settled. Accordingly we will set this case for trial on those issues. The time, date and place of trial is set forth below. * * * In this regard, unless there is a stipulation of settled issues, signed by both parties, all issues raised in the notice of deficiency will be prepared for trial. The fact that there previously may have been some agreement between the parties as to certain items will not be considered. In addition, all documents to be introduced into evidence must be exchanged by the parties on or before December 21, 1990.
Petitioner was also ordered to contact Mr. Calabrese, schedule a conference to take place before December 21, 1990, and to personally attend that conference. Again the Court warned that failure to obey the terms of the order would result in dismissal of the case. The case was called from the calendar on January 7, 1991, in Kansas City. Petitioner, Mr. House and Mr. Calabrese were present. While stating that he had supplied documents to respondent, petitioner admitted that he had never met with Mr. Calabrese and no documents had been *191 exchanged as ordered. Originally a conference was set by petitioner for 3:00 p.m. on December 20, 1990. On that date, petitioner cancelled the meeting, but stated that he would be available at 9:00 p.m., long after respondent's offices were closed. Mr. Calabrese informed him that he would wait until 6:00 p.m., but no later. It is not clear whether petitioner ever appeared, but in any event, no conference was held. Petitioner stated that essentially his substantiation consisted of cancelled checks that were in the courtroom and that these checks were in numerical sequence. The Court then ordered petitioner to have the checks sorted in the various categories of expenses claimed (i.e., cost of goods sold, advertising, etc.) as set out in the notice of deficiency and to meet with Mr. Calabrese, in order to determine what expenses could be settled and what expenses were in dispute. The Court also told petitioner that the Court would not consider whatever may have been offered in the settlement negotiations with Mr. House. The Court continued the case until 10:00 a.m., January 8, 1991. The case was recalled at 10:00 a.m. the following morning. Petitioner had not sorted the checks *192 into categories, and Mr. Calabrese informed the Court that petitioner had made no attempt to meet with him. The Court informed petitioner that it would give him one hour to get the checks in order and to meet with Mr. Calabrese. The Court specifically warned that if there was no progress, petitioner would be defaulted and the Court would only allow deductions totaling $ 131,000. The Court was in recess for over an hour and a half. When the Court reconvened, Mr. Calabrese reported that petitioner had given him some checks for items that he had already agreed to concede. Other than that, no progress was made. Respondent filed a Motion for Sanctions under Section 6673. The hearing was then concluded. Respondent subsequently filed a Motion to Dismiss for Lack of Prosecution on January 28, 1991. We have done everything in our power to bring this case to a resolution. The only cooperation that petitioner has shown is that his accountant met with Mr. Calabrese in July. Other than that meeting, petitioner has ignored, not only the spirit but the letter of, every order that the Court has issued. In his opposition to respondent's motion, petitioner insists that he has cooperated *193 and that the failure to resolve this case resided with respondent's counsel. That is not the situation that the Court has witnessed. For example, petitioner did not attend the March 14, 1990, hearing in Chicago. He never asked for a continuance and offered no plausible explanation as to the reason for his failure to appear. Petitioner was ordered to meet with respondent's counsel and to exchange documents in December, 1990, and failed to comply with that order. At the Kansas City hearing he was ordered to have his documentation for the deductions claimed on his return arranged in categories and to meet with respondent's counsel. He refused to comply with that order. The Court expects, and demands, that the parties meet and determine where their differences are and submit unresolved issues for decision. See . Rule 91 requires that parties enter into stipulations of fact. This, at a minimum, requires that the parties meet in good faith. This is particularly true when the questions focus on substantiation of expenses claimed on a return. There never has been a good faith attempt by petitioner to meet with respondent *194 and to resolve these matters or to put the case in a posture where it could be expeditiously tried. See , affirming an order of dismissal by this Court. In his opposition to respondent's motion to dismiss, petitioner contends that he was prepared to go to trial on January 8, 1991. In a literal sense, that may be correct. But such a trial would have involved sorting through hundreds of documents that were not in any order (other than the checks that were in a meaningless numerical sequence). In short, petitioner would dump his records on the Court, and we would have had to audit the entire return. This is something that should have been done initially with the Revenue Agent and subsequently at a pretrial conference with respondent's attorney. The reason that it was not done clearly lies with petitioner. Rule 123(b) provides that the Court may dismiss a case and enter a decision against a petitioner "For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court." We recognize that dismissal is a strong sanction. In implementing Rule 123(b), we attempt to balance *195 the right of a taxpayer to have his case heard with the policy that avoids harassment to the defending party arising from unjustifiable delay. , affd. . In addition, we must consider the effect of petitioner's conduct upon the Court and other litigants. , affd. without published opinion ; . There is no question that petitioner has intentionally and repeatedly failed to comply with our Rules and with our orders. There is also no question that petitioner's dilatory tactics have had the effect of harassing respondent and caused the Court to expend judicial time that obviously could have been spent in a more productive manner. The case was calendared for hearing or trial on three occasions. On each occasion petitioner was warned that his failure to comply with the provisions of the order would result in the case being dismissed. The first time petitioner simply did not appear. On the second *196 occasion the matter was continued because petitioner's agent represented that the case would be settled. On the third occasion petitioner appeared; he, however, had refused to meet with respondent's counsel prior to trial as ordered and refused to put his records in any meaningful order as required by our order. We have also considered whether other sanctions would be appropriate. Petitioner is appearing without legal counsel. (This is one of the reasons that we did not dismiss the case after the first hearing and why we repeatedly warned petitioner of the consequences of his failure to obey our orders.) It is clear that petitioner, and not an errant representative, charted the course taken. We know of no other sanction, other than dismissal of the case, that could be effective in these circumstances. While we dismiss the case for failure to properly prosecute, in determining the amount of the ultimate deficiency, petitioner will be allowed a deduction in the amount of $ 131,000 on the Schedule C. In addition, in accord with respondent's settlement policy on the Hillcrest issue, any subsequent gain that petitioner reported will be netted against the Hillcrest loss. With regard *197 to the additions to tax under sections 6653(a) and 6661, petitioner has not shown error in the application of these additions to tax. The fact that respondent may have been willing to concede the additions in settlement negotiation does not relieve petitioner of his burden of establishing error in respondent's determination when there is no final settlement. In addition, petitioner has not established that the increased interest under section 6621(c) should not be applied. We turn next to respondent's motion for a penalty under section 6673. That section provides, inter alia, that if it appears to the Tax Court that "proceedings before it have been instituted or maintained by the taxpayer primarily for delay * * * the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $ 25,000." Sec. 6673(a)(1)(A). Section 6673 was amended by section 7731(a) of the Omnibus Budget Reconciliation Act of 1989, Pub.L. 101-239, 103 Stat. 2106, 2400. The changes included increasing the penalty from $ 5,000 to $ 25,000. In discussing the changes made to penalties in general the House Committee on the Budget noted (H. Rept. 101-247, at 1397 (1989): *198 The committee is concerned about the large number of old tax shelter cases that await resolution. * * *. The committee realizes that delay is often caused by the litigants themselves. The committee encourages the Tax Court to use every means within its disposal, including the sanctions on litigants * * * imposed under this bill, to encourage litigants to resolve their disputes * * *
The report continues regarding section 6673(a) at 1399: The bill authorizes the Tax Court to impose a penalty not to exceed $ 25,000 if a taxpayer (1) institutes or maintains a proceeding primarily for delay * * *. The committee intends that the increased penalty (above $ 5,000) apply primarily (but not exclusively) to tax shelter cases * * *.
While petitioner has agreed to settle the tax shelter (the Hillcrest issue) aspects of this case, he, in effect, has delayed final resolution of the issue by refusing to cooperate in any way so that the other issues could be resolved in an orderly fashion, a decision could be entered and the resulting deficiency could be assessed. Petitioner's charted course of conduct has been to delay these proceedings with the ultimate result of delaying payment. *199 In our view this is the type of conduct that was included in the Congressional concern when the changes to section 6673(a) were enacted in 1989. Viewing all of the circumstances, we require petitioner to pay a penalty in the amount of $ 10,000 to the United States. An Order of Dismissal and Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the taxable year in question unless otherwise noted. All rule references are to the Tax Court Rules of Practice and Procedure.↩